UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TROY D. KELLOGG and SHARON KELLOGG,

                Plaintiffs,        **COMPLAINT**

vs.

                                        **Index No.:**

MICHIGAN MILLERS MUTUAL INSURANCE
COMPANY,

                Defendant.

---

TROY D. KELLOGG ("plaintiff") and SHARON KELLOGG (collectively "plaintiffs"), by their attorneys, Faraci Lange, LLP, for their complaint against MICHIGAN MILLERS MUTUAL INSURANCE COMPANY ("defendant"), alleges as follows:

## JURISDICTION AND VENUE

1. Plaintiffs are residents of the County of Monroe, State of New York.

2. Upon information and belief, defendant is a Michigan corporation with its principle place of business at 2425 E. Grand River Ave., Lansing, Michigan 48912.

3. Under 28 USC §1332, this Court has jurisdiction over this matter because there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000.

4. Under 28 USC §1391, venue is appropriate in the Western District of New York because the events giving rise to the cause of action occurred here.

## GENERAL FACTS

5. On December 6, 2016, at approximately 10:30 PM, a vehicle driven by Mr. Matthew W. Liamero was attempting to leave the New York State Thruway at exit 45 near Victor, New York, when the vehicle slid off the exit ramp and into a ditch.

6. Plaintiff, in his capacity as owner and operator of Joe Benson's Service, Inc., responded to the accident pursuant to a contract between the New York State Thruway Authority and Joe Benson's Service, Inc.

7. In order to remove Mr. Liamero's vehicle from the ditch, plaintiff attached the winch cable from his tow truck to the right front wheel of Mr. Liamero's vehicle using a continuous loop.

8. Upon information and belief, after doing this, plaintiff was able to use the tow truck winch to pull Mr. Liamero's car from the ditch, winching it onto the shoulder of the Thruway exit ramp directly behind the tow truck.

9. Upon information and belief, as plaintiff was in the process of disconnecting the winch cable from the front right wheel of the Liamero vehicle, Mr. Carey Gainey lost control of his vehicle while heading toward the exit 45 off-ramp.

10. Upon information and belief, Mr. Gainey's vehicle crashed into Mr. Liamero's vehicle on the back driver's side of the Liamero vehicle at an angle, causing the Liamero vehicle to move forward and to the right, hitting the plaintiff.

11. Upon information and belief, at the time he was struck, the plaintiff was near the right front tire of the Liamero vehicle and was in the process of disconnecting the tow truck winch cable from the Liamero vehicle.

12. Upon information and belief, after being struck, plaintiff was thrown twenty (20) to thirty (30) feet off the right hand shoulder of the exit ramp.

13. Mr. Gainey was issued traffic tickets for violations of sections 1180E, 1128A, and 1128D of the Vehicle and Traffic law.

14. As a result of the accident, plaintiff suffered multiple severe and permanent injuries including multiple fractures and a traumatic brain injury.

## CONTRACT PROVISIONS

15. Before the motor vehicle accident on December 6, 2016, Joe Benson's Service, Inc. purchased a commercial automobile policy from defendant bearing the Policy No. V 0700302, the contract for which is attached as **Exhibit "A".**

16. This policy was issued to Joe Benson's Service, Inc., which was owned and operated by plaintiffs.

17. The tow truck plaintiff was using on December 6, 2016, was an insured motor vehicle under this policy.

18. This policy was in effect on December 6, 2016, as it was issued from November 23, 2016, and expired on November 23, 2017.

19. Among other things, this policy provided for the mandatory personal injury protection benefits ("PIP") of $50,000, additional personal injury protection ("APIP") of $100,000 and supplemental uninsured/underinsured motorist ("SUM") coverage of $1,000,000.

20. Joe Benson's Service, Inc. paid a premium of $244.00 per year for the PIP coverage, $160.00 per year for the APIP coverage, and $960.00 per year for the SUM coverage.

21. In total, Joe Benson's Service, Inc. paid an estimated total premium of $33,368.00 per year for this policy.

22. The purpose of the APIP provision of this insurance contract was to provide additional coverage for first party benefits for covered persons whose recovery exceeded the mandatory $50,000 PIP benefit.

23. The purpose of the SUM provision of this insurance contract was to provide additional bodily injury coverage to covered persons injured in a motor vehicle accident by one or more drivers whose bodily injury liability limits were less than $1,000,000.

### CAUSE OF ACTION FOR BREACH OF CONTRACT: PERSONAL INJURY PROTECTION AND ADDITIONAL PERSONAL INJURY PROTECTION COVERAGE

24. On December 6, 2016, the plaintiff was employed by Joe Benson's Service, Inc. and was acting in the scope of his employment when he was injured.

25. The insurance policy issued by the defendant to Joe Benson's Service, Inc. provided PIP and APIP coverage to an "eligible injured person" injured through the "use and operation" of a motor vehicle.

26. On December 6, 2016, the plaintiff was an "eligible injured person" under the insurance policy issued to Joe Benson's Service, Inc. by the defendant.

27. On December 6, 2016, the plaintiff was injured through the "use and operation" of the tow truck, a vehicle covered under the insurance policy issued to Joe Benson's Service, Inc. by the defendant.

28. As such, on December 6, 2016, the plaintiff was entitled to receive PIP and APIP coverage under the insurance policy issued to Joe Benson's Service, Inc. by the defendant.

29. As required under the terms of the policy, on or about December 7, 2016, the insurance agent for Joe Benson's Service, Inc. informed the defendant of the plaintiff's accident and requested the defendant open a claim file for the plaintiff's case.

30. On or about December 9, 2016, the defendant opened a claim file for the plaintiff's claim and assigned it the claim number T00191441.

31. On December 15, 2016, the plaintiff filed a No-Fault Application and Employer's Wage Verification Report with the defendant as required under the defendant's policy.

32. On March 30, 2017, defendant issued a formal denial of both the PIP and APIP coverage for the plaintiff. A copy of the denial is attached as **Exhibit "B".**

33. At the time of the accident, plaintiff was an eligible injured person under the policy because he sustained personal injuries while using and operating the insured tow truck in the State of New York while not occupying another motor vehicle.

34. Specifically, upon information and belief, plaintiff was using the tow truck to pull Mr. Liamero's vehicle out of the ditch and was in the process of disconnecting the tow truck winch from Mr. Liamero's vehicle when the accident occurred.

35. Under the plain terms of the contract, plaintiff is entitled to receive PIP and APIP benefits from defendant and defendant's denial of PIP and APIP benefits is a breach of its contractual obligations to plaintiff.

### CAUSE OF ACTION FOR BREACH OF CONTRACT: SUPPLEMENTAL UNINSURED/UNDERINSURED MOTORIST COVERAGE

36. The insurance policy issued by the defendant to Joe Benson's Service, Inc. provided SUM coverage in situations where an "eligible covered person" was injured by a party with less than $1,000,000 in bodily injury coverage.

37. SUM benefits are available under the insurance policy issued to Joe Benson's Service, Inc. by the defendant to the "named insured" or to any person who was "occupying" a covered vehicle at the time of injury.

38. The term "occupying" in the insurance policy issued to Joe Benson's Service, Inc. by the defendant is defined as "in, upon, entering into or exiting from" a covered vehicle.

39. The tow truck that plaintiff was operating on December 6, 2016, at the time of his injury was a "covered vehicle" under the insurance policy issued to Joe Benson's Service, Inc. by the defendant.

40. On December 6, 2016, plaintiff was an "insured" as that term is defined under the SUM provision of the insurance policy issued to Joe Benson's Service, Inc. by the defendant.

41. Pursuant to the terms of the policy, on December 9, 2016, plaintiff gave timely notice to the defendant of plaintiff's intention to make a claim to the SUM coverage under the insurance policy issued to Joe Benson's Service, Inc. by the defendant.

42. The defendant acknowledged receiving this timely notice in a letter dated December 13, 2016.

43. Pursuant to the terms of the policy, on March 22, 2017, plaintiff provided the defendant with a written settlement offer by the insurance carrier for the at-fault Gainey vehicle of the full available policy limits of $25,000, seeking defendant's written permission to settle the underlying claim.

44. Defendant has not provided written consent, but instead has denied in writing SUM coverage to the plaintiff under the policy, which is dated March 4, 2016, a copy of which is attached as **Exhibit "C".**

45. Plaintiff is entitled to receive SUM benefits from defendant under the terms of the insurance policy defendant issued to Joe Benson's Service, Inc.

46. Defendant's failure to provide SUM benefits is a breach of its contractual obligations to plaintiff.

## CAUSE OF ACTION FOR BREACH OF CONTRACT: MEDICAL PAYMENTS COVERAGE

47. The insurance policy issued by the defendant to Joe Benson's Service, Inc. provided medical payments coverage with a policy limit of $5,000.

48. Joe Benson's Service, Inc. paid a premium of $16.00 per year for this coverage.

49. The insurance policy issued by the defendant to Joe Benson's Service, Inc. provides medical payments coverage for "necessary medical and funeral services to or for an 'insured' who sustains 'bodily injury' caused by an accident."

50. On December 6, 2016, the plaintiff was an insured as that term is defined in the medical payments provision under the policy issued by the defendant to Joe Benson's Service, Inc.

51. On December 6, 2016, plaintiff sustained bodily injury in an accident as those terms are defined in the medical payments provision under the policy issued by the defendant to Joe Benson's Service, Inc.

52. The insurance policy issued by defendant to Joe Benson's Service, Inc. was in full force and effect on December 6, 2016.

53. Plaintiff is therefore entitled to benefits under the medical payments coverage of defendant's policy.

54. On March 30, 2017, defendant disclaimed medical payments coverage to the plaintiff, a copy of which is attached as **Exhibit "B".**

55. Defendant's failure to provide medical payments coverage is a breach of its contractual obligations to plaintiff.

## JURY TRIAL DEMANDED

56. Plaintiff hereby demands a trial by jury as to all issues.

**WHEREFORE**, the plaintiff demands judgment against the defendant in a sum sufficient to compensate the plaintiff for the damages sustained, together with interests, costs, disbursements, and such other and further relief as the Court deems just and proper.

DATED:  April 19, 2017                                     FARACI LANGE, LLP

/s/Matthew F. Belanger, Esq.
Matthew F. Belanger, Esq.
Attorneys for Plaintiff
28 East Main Street, Suite 1100
Rochester, New York   14614
Telephone:   (585) 325-5150
Email: mbelanger@faraci.com