UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TROY D. KELLOGG and
SHARON KELLOGG,

                    Plaintiffs,

        v.

MICHIGAN MILLERS MUTUAL
INSURANCE COMPANY,

                  Defendant.

_____

                                     <u>DECISION & ORDER</u>

                                     17-CV-6242P

## <u>PRELIMINARY STATEMENT</u>

        Plaintiffs Troy D. Kellogg and Sharon Kellogg ("plaintiffs") have sued defendant

Michigan Millers Mutual Insurance Company ("Michigan Mutual") for breach of contract

arising from Michigan Mutual's disclaimer of Personal Injury Protection Coverage ("PIP"),

Additional Personal Injury Protection Coverage ("APIP"), Supplemental

Uninsured/Underinsured Motorist Coverage ("SUM"), and Medical Payments Coverage

("Medical Payments") to Troy Kellogg for injuries resulting from a motor vehicle accident on

December 6, 2016.  (Docket # 1).  Pursuant to 28 U.S.C. § 636(c), the parties have consented to

the disposition of this case by a United States magistrate judge.  (Docket # 12).  Currently

pending before the Court are the parties' cross-motions for judgment as a matter of law.  (Docket

## 26, 27).

## THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

Plaintiffs seek judgment declaring that the policy issued by Michigan Mutual to Joe Benson's Service, Inc. ("Benson's), a towing company owned and operated by Mr. Kellogg, provides PIP and APIP coverage to Mr. Kellogg for his injuries because he was "using" and/or "operating" an insured vehicle at the time of the accident. (Docket ## 26-25 at 4-8; 30 at 4-10). They also seek judgment declaring that the policy provides Medical Payments and SUM coverage to Mr. Kellogg for his injuries because he was "occupying" an insured vehicle at the time of the accident.[1] (Docket ## 26-25 at 9-20; 30 at 11-13).

Michigan Mutual opposes plaintiffs' motion and also moves for judgment in its favor dismissing the complaint in its entirety. (Docket ## 27, 32). Michigan Mutual maintains that it properly disclaimed PIP and APIP coverage under the policy because Mr. Kellogg's injuries were not caused by his use or operation of the insured tow truck. (Docket ## 27-3 at 6-13; 32-9 at 5-7). Michigan Mutual also contends that Mr. Kellogg is not entitled to SUM or Medical Payments coverage because he was not occupying the insured vehicle at the time of the accident. (Docket ## 27-3 at 13-20; 32-9 at 8-14).

Both parties agree that no issues of material fact exist to preclude summary resolution of the claims.

### A.    Factual Background

The following facts are undisputed unless otherwise noted. On December 6, 2016, at approximately 9:30 p.m., Matthew Liamero ("Liamero") lost control of his vehicle, a silver Ford Focus ("Ford Focus" or "Liamero vehicle"), while attempting to exit the westbound

---

[1] Plaintiffs' submissions suggest that Mr. Kellogg is entitled to Medical Payments coverage because he was "using" or "operating" the insured vehicle at the time of the injury. (Docket # 26-25 at 21). However, during oral argument, both parties agreed that the relevant inquiry for Medical Payments coverage was whether he was "occupying" the insured vehicle at the time of the injury.

2

New York State Thruway at Exit 45.  (Docket ## 26-24 at ¶¶ 9, 11; 32-10 at ¶¶ 9, 11).  The Ford Focus left the road, rotated, and ended up in a ditch facing oncoming traffic.  (Docket ## 26-24 at ¶ 10; 32-10 at ¶ 10).  Liamero called AAA, which dispatched Troy Kellogg ("Kellogg"), the owner and operator of Benson's, to respond to assist Liamero.  (Docket ## 26-24 at ¶¶ 1, 7, 12-15; 32-10 at ¶¶ 1, 7, 12-15).  Approximately 35 to 50 minutes later, Kellogg arrived at the scene in a 2004 Ford tow truck ("tow truck") owned by Benson's and insured by Michigan Mutual.  (Docket ## 26-24 at ¶¶ 7-8, 13; 27-1 at ¶¶ 3, 5, 12; 31 at ¶¶ 3, 5, 12; 32-10 at ¶¶ 7-8, 13).

Kellogg explained to Liamero that he was going to attach a cloth strap to the right front tire of the Ford Focus, attach the strap to the winch, and use the tow truck's winch to pull the vehicle from the ditch.  (Docket ## 26-24 at ¶ 18; 32-10 at ¶ 18).  During the towing process, Kellogg directed Liamero when and how to turn his steering wheel, and Kellogg returned to the tow truck at least once in order to maneuver it to create a better angle to pull the Ford Focus from the ditch.  (Docket ## 26-24 at ¶¶ 20-22; 32-10 at ¶¶ 20-22).  Kellogg successfully pulled the Ford Focus onto the shoulder of the road directly behind the tow truck.  (Docket ## 26-24 at ¶ 23; 32-10 at ¶ 23).

Kellogg approached the open passenger's window of the Ford Focus and told Liamero that he was going to detach the tow truck from the Ford Focus so that both vehicles could be moved to a safer location to complete paperwork.  (Docket ## 26-24 at ¶ 24; 32-10 at ¶ 24).  Kellogg got onto his knees in order to detach the cloth strap from the right front tire of the Ford Focus, which he had earlier attached to the winch cable of his truck in order to tow the Ford out of the ditch.  (Docket ## 26-24 at ¶ 25; 32-10 at ¶ 25).  While he was in that position, the Ford Focus was struck from the rear by another vehicle driven by Carey Gainey ("Gainey") that

3

had lost control while exiting the Thruway at Exit 45.  (Docket ## 26-24 at ¶¶ 26-28, 30; 32-10 at ¶¶ 26-28, 30).  The parties dispute whether Kellogg was touching or handling either the cloth strap or the tow truck's winch cable at the moment of impact, but do not dispute that Kellogg had not completed the act of detaching the cloth strap from the Ford Focus.  (Docket ## 26-24 at ¶¶ 29-31, 40-42; 32-10 at ¶¶ 29-31, 40-42).

The force of the impact of Gainey's car caused the Ford Focus to propel forward and rotate; as it did, the Ford struck Kellogg and the tow truck.  (Docket ## 26-24 at ¶¶ 28, 32-33; 32-10 at ¶¶ 28, 32-33).  Kellogg landed in a gully approximately ten yards from the road and was found unresponsive.  (Docket ## 26-24 at ¶¶ 34-35; 32-10 at ¶¶ 34-35).

At the time of the accident, the tow truck was insured by Michigan Mutual under a policy of insurance issued to Benson's.  (Docket ## 26-24 at ¶ 6; 32-10 at ¶ 6).  In relevant part, the policy provided $50,000 limits for PIP coverage, $100,000 limits for APIP coverage, $5,000 limits for Medical Payments coverage, and $1,000,000 limits for SUM coverage. (Docket ## 26-24 at ¶ 3; 32-10 at ¶ 3).  Benson's paid separate annual premiums for each of the coverages.  (Docket ## 26-24 at ¶ 4; 32-10 at ¶ 4).  Following the accident, plaintiffs submitted a claim under the policy for PIP, APIP, Medical Payments, and SUM coverage for Kellogg's injuries.  (Docket ## 26-24 at ¶¶ 46, 57; 32-10 at ¶¶ 46, 57).  Michigan Mutual denied the claim for each type of coverage.  (Docket ## 26-24 at ¶¶ 51-54, 61-62; 32-10 at ¶¶ 51-54, 61-62).

The relevant endorsements in the policy provide as follows.  The "New York Mandatory Personal Injury Protection [PIP] Endorsement" provides in relevant part:

### Section I

### Mandatory Personal Injury Protection

The Company will pay first-party benefits to
reimburse for basic economic loss sustained by an

4

eligible injured person on account of personal injuries caused by an accident arising out of the use or operation of a motor vehicle.

**Eligible Injured Person**

Subject to the exclusions and conditions set forth below, an eligible injured person is:

\*    \*    \*

**(c)** Any other person who sustains personal injury arising out of the use or operation of the insured motor vehicle in the State of New York while not occupying another motor vehicle.

(Docket # 26-23 at 70-71).

The "Additional Personal Injury Protection [APIP] (New York)" Endorsement

provides in relevant part:

**Additional Personal Injury Protection**

The Company will pay additional first party benefits to reimburse for extended economic loss on account of personal injuries sustained by an eligible injured person and caused by an accident arising out of the use or operation of a motor vehicle.

**Eligible Injured Person**

Subject to the exclusions set forth below, an eligible injured person is:

\*    \*    \*

**(c)** Any other person who sustains personal injury arising out of the use or operation of the insured motor vehicle while occupying the insured motor vehicle.

(*Id.* at 87).

The "Auto Medical Payments Coverage" Endorsement provides in relevant part:

**A. Coverage**

We will pay reasonable expenses incurred for necessary medical and funeral services to or for an "insured" who sustains "bodily injury" caused by "accident."

**B. Who is Insured**

*     *     *

**3**. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto."

*     *     *

**F. Additional Definitions**

*     *     *

**2.** "Occupying" means in, upon, getting in, on, out or off.

(*Id.* at 103-04).

The "New York Supplementary Uninsured/Underinsured Motorists [SUM]

Endorsement" provides in relevant part:

**INSURING AGREEMENTS**

**1. Definitions**

For the purposes of this SUM endorsement, the following terms have the following meanings.

**a. Insured**

*     *     *

(2)  Any other person while occupying:

(a)  A motor vehicle insured for SUM under this policy.

\*     \*     \*

**d. Occupying**

> The term "occupying" means in, upon, entering into, or exiting from a motor vehicle.

\*     \*     \*

**2. Damages For Bodily Injury Caused By Uninsured Motor Vehicles**

> We will pay all sums that the insured or the insured's legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured, caused by an accident arising out of such uninsured motor vehicle's ownership, maintenance or use, subject to the Exclusions, Conditions, Limits or other provisions of this SUM endorsement.

(*Id.* at 99-100).

On March 4, 2017, Michigan Mutual issued a denial of coverage letter to Kellogg disclaiming coverage for SUM benefits. (Docket ## 26-22; 26-24 at ¶ 61; 32-10 at ¶ 61). The letter stated that Kellogg was not entitled to coverage because he did not meet the definition of an insured in the SUM endorsement. (Docket ## 26-22; 26-24 at ¶ 62; 32-10 at ¶ 62).

On March 30, 2017, Michigan Mutual issued a second denial of coverage letter to Kellogg, disclaiming coverage for PIP, APIP, and Medical Payments benefits. (Docket ## 26-24 at ¶ 51; 32-10 at ¶ 51). With respect to PIP and APIP coverage, Michigan Mutual disclaimed coverage on the grounds that Kellogg was not "using or operating" the tow truck at the time of the accident.[2] (Docket ## 26-16; 26-24 at ¶¶ 52-53; 32-10 at ¶¶ 52-53). With respect to the Medical Payments coverage, Michigan Mutual disclaimed on the grounds that Kellogg was not

---

[2] Despite denying coverage, Michigan Mutual paid PIP benefits in the amount of $50,000 to Kellogg; it apparently will seek to recoup that benefit through coverage litigation with the insurers of the other vehicles involved in the accident. (Docket ## 26-24 at ¶¶ 55-56; 32-10 at ¶¶ 55-56).

"occupying" the tow truck at the time of the incident.  (Docket ## 26-16; 26-24 at ¶ 54; 32-10 at ¶ 54).

**B.**    **Discussion**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In reaching this determination, the court must assess whether there are any disputed material facts and, in so doing, must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 166-67 (2d Cir. 1991).  A fact is "material" only if it has some effect on the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248; *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *see also Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d at 97.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, after which the non-moving party must come forward with sufficient evidence to support a jury verdict in its favor; the motion will not be defeated based upon conjecture, surmise or the existence of "metaphysical doubt" concerning the facts.  *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  The party seeking to avoid summary judgment "must do more than make broad factual allegations and invoke the appropriate statute.  The [party] must also show, by affidavits or as otherwise provided in Rule 56 . . . , that there are specific

factual issues that can only be resolved at trial." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *see also Driscoll v. Townsend*, 60 F. Supp. 2d 78, 80 (W.D.N.Y. 1999).

> As the Second Circuit has explained:

> [T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution. . . . [I]t must be kept in mind that only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute.

*Gallo v. Prudential Residential Serv., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

## 1. PIP and APIP Coverage

As argued in their briefs, and conceded during oral argument on August 9, 2018, the parties agree that the sole issue before the Court with respect to whether Michigan Mutual has a duty to provide PIP and APIP coverage to Kellogg is whether his injuries arose "out of the use or operation" of the tow truck. [3] (Docket ## 26-25 at 5-8; 27-3 at 6-13). The parties maintain that there are no factual disputes that would preclude summary resolution of this issue.

The purposes of New York's No-Fault Insurance Law, enacted in 1973, were "to remove the vast majority of claims arising from vehicular accidents from the sphere of common-law tort litigation, and to establish a quick, sure and efficient system for obtaining compensation for economic loss suffered as a result of such accidents." *Walton v. Lumbermens Mut. Cas. Co.*, 88 N.Y.2d 211, 214 (N.Y. 1996). The statute provides that "a person is entitled to first-party benefits from the insurer of a vehicle 'for loss arising out of the use or operation … of such motor vehicle.'" *Id.* (citing N.Y. Ins. Law §§ 5102(b), 5103(a)). Neither the statute nor the policy (which is required by the statute and tracks its language) defines the phrase "use or

---

[3] During oral argument, Michigan Mutual conceded that for the purposes of PIP and APIP coverage, whether Kellogg was "occupying" the tow truck at the time of the accident is irrelevant.

operation" beyond specifying, in accordance with relevant New York regulations for PIP coverage, that it "includes the loading or unloading of such vehicle."  *See* Docket # 26-23 at 72; *see also* 11 N.Y.C.R.R. 65-1.1(d).

Kellogg maintains that he is entitled to PIP and APIP coverage on the grounds that the undisputed facts establish that he was "using" the tow truck at the time of the incident. (Docket ## 26-25 at 5-8; 30 at 2-4, 8-10; 33 at 2-5).  Kellogg argues that the facts demonstrate that the only reason he was present when the accident occurred was to tow the Ford Focus out of the ditch – an undertaking he had not completed when he was injured.  (*Id.*).  These facts, he contends, establish that he was "using" the tow truck at the time he was injured and that the tow truck was a substantial factor in causing his injury.  (*Id.*).  Kellogg urges that the term "use" should be interpreted broadly to promote the legislative purpose of New York's no-fault statute "to ensure 'that every auto accident victim . . . be compensated for substantially all of his economic losses promptly and without regard to fault.'"[4]  (Docket # 30 at 10 (quoting *Johnson v. Hartford Ins. Co.*, 100 Misc. 2d 367, 370 (Sup. Ct. Monroe Cty. 1979)).

Michigan Mutual argues that Kellogg is not entitled to PIP and APIP coverage under its policy because the undisputed facts establish that Kellogg was not "using" the tow truck at the time of the accident.[5]  (Docket ## 27-3 at 6-13; 32-9 at 5-7).  Michigan Mutual further maintains that even if Kellogg could be considered to have been using the tow truck at

---

[4]  Kellogg also argues that he is entitled to coverage because he falls within the definition of "using or operating" under Vehicle and Traffic Law Section 388(1).  (Docket ## 26-25 at 8; 33 at 5-6).  The New York Court of Appeals, however, has expressly rejected the contention that the term "using or operating" in the Vehicle and Traffic Law necessarily should be interpreted synonymously with the term under no-fault liability law.  *See Argentina v. Emery World Wide Delivery Corp.*, 93 N.Y.2d 554, 562-63 (N.Y. 1999) ("[h]aving different purposes, section 5103(a)(1) of the Insurance Law and section 388(1) of the Vehicle and Traffic Law should not be interpreted identically").  In any event, as discussed below, I find that even if Kellogg was "using or operating" the tow truck within the meaning of the no-fault statute, he is nevertheless ineligible for PIP and APIP coverage.

[5]  Michigan Mutual does not contest that Kellogg may be entitled to PIP coverage under the Gainey or Liamero policies.  (Docket # 32-9 at 7).

the time of the accident, his injuries did not arise out of the use of the tow truck, thus rendering him ineligible for coverage under the policy. (Docket ## 32-9 at 3-4; 27-3 at 9-10; 34 at 2-5).

Judged under controlling and relevant authority, the undisputed facts of this case demonstrate that Kellogg does not qualify for PIP or APIP coverage under the Michigan Mutual policy. The essence of Kellogg's claim to coverage is that he was injured by the collision between the Gainey and Liamero vehicles because, and only because, he happened to be using his insured tow truck to tow the Liamero vehicle out of the ditch at the time of the impact. *See* Docket # 30 at 9 ("[t]he relevant question is whether Kellogg was using a covered vehicle when he was insured – which in this case he clearly was – not whether contact with that vehicle caused an injury[;] in other words, the use of an insured vehicle must be a substantial factor in the *event* that brought about the injuries, but not the actual cause of those injuries" (emphasis in original)). Whatever appeal the argument may have, it is foreclosed by the decision of the New York Court of Appeals in *Walton Lumbermens Mut. Cas. Co.*, 88 N.Y.2d 211, 215 (N.Y. 1996). In that case, the Court made clear that "the mere fortuity that [the] plaintiff's injury occurred while he was engaged in unloading the [insured] truck does not support a claim for no-fault benefits because the vehicle itself was not a cause of the damage." *Walton*, 88 N.Y.2d at 215. In other words, even though "use or operation of a motor vehicle" is defined by New York no-fault regulations to include "the loading or unloading of such vehicle," the Court held that the plaintiff's engagement in such activity – while it may be sufficient to establish that the plaintiff was "using" the vehicle within the meaning of the statute – does not "necessarily" establish the plaintiff's entitlement to no-fault first-party benefits. *Id.* at 213, 216.

Rather, the Court of Appeals held that in order to qualify for coverage, the "use or operation" of the insured vehicle must be either "a proximate cause" of or an "instrumentality"

that produced the plaintiff's injury.[6] *Id.* at 214-15. *See also Cividanes v. City of New York*, 20 N.Y.3d 925, 926 (N.Y. 2012) (no-fault coverage inapplicable because use or operation of the insured vehicle "was neither a 'proximate cause' nor an 'instrumentality' that produced plaintiff's injury") (citing *Walton*); *Empire Ins. Co. v. Hilliard*, 184 Misc. 2d 821, 823 (Sup. Ct. Westchester Cty. 2000) ("it appears clear in New York that the motor vehicle use or operation must be a proximate cause of the accident for no-fault purposes"). As the Court reasoned in *Walton*, "[t]he vehicle must be a proximate cause of the injury before the absolute liability imposed by the statute arises," noting that such a requirement "is consistent with other[] [decisions] which have considered the scope of the no-fault statute and have generally held that no-fault benefits are unavailable when a party is injured by an instrumentality other than the vehicle itself." *Walton*, 88 N.Y.2d at 215. The Court observed that the "common thread" in the decisions "is that no-fault liability will not attach when the injury is caused by something other than a motor vehicle because in such circumstances the incident cannot be considered an accident related to the use of the motor vehicle." *Id.* at 215-16.

Kellogg urges this Court to construe *Walton* to apply only to coverage disputes arising from non-motor vehicle accident torts, such as the product-liability tort at issue in *Walton* (a defective "levelator" that could be attached to the truck bed to facilitate unloading). (Docket # 26-25 at 6). In other words, Kellogg argues that *Walton* is inapplicable to coverage disputes that involve any motor vehicle accident. (*Id.*). Contrary to Kellogg's position, nothing in the *Walton* decision persuades me that the proximate cause/instrumentality requirement applies to certain no-fault coverage disputes (those involving non-motor vehicle torts), but not to others

---

[6] Because there may be more than one proximate cause of an injury, the proper inquiry is not whether the vehicle was "the" proximate cause of the injury, but rather whether it was "a" proximate cause of the injury. *Argentina v. Emery World Wide Delivery Corp.*, 93 N.Y.2d at 560 n.2.

(those involving any motor vehicle accident).  *See Walton*, 88 N.Y.2d at 216 ("[t]he vehicle must

be a proximate cause of the injury before the absolute liability imposed by the statute arises");

*see also Argentina*, 93 N.Y.2d at 562 ("[t]he proximate cause limitation in *Walton* was necessary

to avoid an overbroad application of the No-Fault Law"); *Bender v. Farah*, 14 Misc. 3d 142(A),

*1 (2d Dep't 2007) (plaintiff's injuries sustained during motor vehicle accident fell outside ambit

of no-fault law where neither of defendant's vehicles was proximate cause of accident).

        Moreover, to the extent that Kellogg argues that he is entitled to PIP and APIP

coverage because he was injured while using the tow truck (Docket # 30 at 9), that argument

ignores the proximate cause/instrumentality requirement of *Walton*.  Indeed, the cases he cites in

support of this contention are distinguishable.  As an initial matter, the majority of the lower

court cases upon which Kellogg relies were decided before *Walton*.  *See*, *e.g.*, *Celona v. Royal

Globe Ins. Co.*, 85 A.D.2d 635 (2d Dep't 1981); *In re 20th Century Ins. Co. (Lumbermen's Mut.

Cas. Co.)*, 80 A.D.2d 288 (4th Dep't 1981); *Yanis v. Texaco*, 85 Misc. 2d 94 (Civ. Ct. N.Y. Cty.

1975).  In any event, in the cases cited, the use of the vehicle appears to have been either the

proximate cause of or instrumentality that produced the injuries, *see*, *e.g.*, *Trentini v. Metro.

Prop. & Cas. Ins. Co.*, 2 A.D.3d 957, 958 (3d Dep't 2003) (vehicle was in use at the time

plaintiff's snowmobile collided with the stalled insured vehicle, which resulted in injury to

plaintiff); *In re Farm Family Cas. Ins. Co. (Trapani)*, 301 A.D.2d 740, 741 (3d Dep't 2003)

("the determinative issue here is whether [the insured] vehicle was a proximate cause of

respondent's injuries[;] . . . we find that the impact of [the insured] vehicle with the utility pole

was not a cause so remote in either time or space from respondent's injuries as to preclude

recovery as a matter of law") (internal quotations omitted); *Celona v. Royal Globe Ins. Co.*, 85

A.D.2d at 637 (affirming determination that insured oil truck was a proximate cause of the

injuries because its position obscured the vision of oncoming traffic, which resulted in the accident); *In re 20th Century Ins. Co. (Lumbermen's Mut. Cas. Co.)*, 80 A.D.2d at 290 (injured party was unloading his car and therefore "using" his vehicle when he was pinned between his vehicle and another vehicle); *Yanis v. Texaco*, 85 Misc. 2d at 96 (insured oil delivery truck was in use at the time plaintiff tripped over the fuel hose).

Thus, under *Walton*, even assuming that the insured tow truck was in "use" at the time of the accident,[7] Kellogg must still demonstrate that its use was a proximate cause of his injuries or that it was the instrumentality that produced Kellogg's injuries. Nothing in the record suggests that the position of the tow truck obstructed the path of Gainey's vehicle or her view or that the use of tow truck otherwise created a dangerous condition reasonably foreseeable to result in injury. *Compare New York City Transit Auth. v. Physical Med. & Rehab of N.Y.*, 158 A.D.3d 568, 569 (1st Dep't) (accident involved use or operation of motor vehicle (bus) within meaning of Insurance Law § 5104(a); bus was proximate cause of injury where passenger was injured exiting bus after driver refused to activate lift device or lower bus to assist passenger's exit), *lv. denied*, 32 N.Y.3d 910 (N.Y. 2018); *Mazzarella v. Paolangeli*, 63 A.D.3d 1420, 1422 (3d Dep't 2009) (use and operation of truck was proximate cause of injury where damaged truck spilled oil on highway causing plaintiff's vehicle to leave road and hit tree; "[u]nder these circumstances, it cannot be said that the truck, as operated negligently by [the driver], was wholly incidental to the accident or that [the driver's] negligent use of the truck was so remote in time and space from the accident that it cannot be considered a proximate cause of the injuries");

---

[7] Some authority suggests that Kellogg's engagement of the tow truck might be considered to fall outside the definition of "use or operation" within the meaning of the New York No-Fault Law. *See*, *e.g.*, *Faro v. Transamerica Ins. Co.*, 78 A.D.2d 538, 538 (2d Dep't 1980) (petitioner who was injured while standing in the bucket of the insured crane truck in order to repair a street light was not entitled to no-fault benefits because the injury did not arise out of the use or operation of the insured vehicle), *aff'd*, 54 N.Y.2d 647 (N.Y. 1981). Resolution of this issue, however, is not necessary to my determination of the PIP or APIP coverage dispute, and I do not reach it.

*In re Farm Family Cas. Ins. Co. (Trapani)*, 301 A.D.2d at 741-42 (respondent who fell and was injured fleeing from scene of accident involving downed power lines entitled to seek no-fault coverage; "the impact of the [insured] car with the utility pole was not a cause so remote in either time or space from respondent's injuries as to preclude recovery as a matter of law . . . , and neither the shorting power lines nor respondent's flight were so extraordinary or unforeseeable that they should be viewed as superseding acts which, as a matter of law, break the causal link") (internal quotation omitted); *Celona*, 85 A.D.2d at 637 (positioning of insured vehicle obstructed view of oncoming traffic causing the injury) *with Hammond v. GMAC Ins. Grp.*, 56 A.D.3d 882, 883 (3d Dep't 2008) (plaintiff injured when he attempted to light cigarette and ignited gasoline he had spilled on his clothing; "although the plaintiff's injuries occurred while he was inside the moving vehicle, because the vehicle itself was not a cause of the damage, he is not entitled to no-fault benefits") (internal quotations omitted); *Bender v. Farah*, 14 Misc. 3d 142(A) at *1 (plaintiff who was injured when vehicle in which she was a passenger collided with another vehicle following defendant's flagman's directions not entitled to no-fault coverage; although flagman was directing traffic around defendant's dump truck and backhoe at construction site, record did not establish that either of defendant's insured vehicles was proximate cause of accident); *Sochinski v. Bankers & Shippers Ins. Co.*, 221 A.D.2d 889, 889 (3d Dep't 1995) (plaintiff injured when airborne particles caused by sandblasting at construction site entered open window of insured vehicle; "plaintiff's motor vehicle was not the proximate cause of his eye injury; . . . [his] use and operation of his motor vehicle [was] wholly incidental to the event which produced his injury") (internal quotation omitted); *New York City Transit Auth. v. Heights Med. Care, P.C.*, 52 Misc. 3d 1214(A), *6 (Sup. Ct. N.Y. Cty. 2016) (passenger who was injured while riding bus near building that exploded not entitled to no-fault benefits; "because [the

passenger's] injuries were the result of an external explosion unrelated to the use or operation of the bus[,] . . . the bus was not the proximate cause of his injuries"); *Rivera v. Outstanding Transp.*, 39 Misc. 3d 1228(A), *3 (Sup. Ct. Kings Cty. 2013) (plaintiff who suffered injuries after left on bus overnight not entitled to no-fault coverage; "[w]hile it is true that the incident occurred within a vehicle, and the injuries occurred while certain instrumentalities within the vehicle (e.g., seatbelt, seat cushion) were in use, the subject vehicle was, at best, merely a contributing factor to the injuries, not the cause of them"); *Reliance Ins. Co. v. O'Neill*, 105 Misc. 2d 1018, 1020 (Sup. Ct. N.Y. Cty. 1980) (pedestrian who was injured when struck by insured vehicle that was hit by second vehicle not entitled to no-fault coverage; "[i]n this case the use or operation of the [insured] vehicle was not the proximate cause of the accident[;] . . . [t]he force of the other car striking the [insured] vehicle was the cause of the accident").

Nor do the undisputed facts demonstrate that the insured tow truck was an instrumentality of the injuries suffered by Kellogg. *Compare Lazzari v. Qualcon Constr., LLC*, 162 A.D.3d 440, 440-41 (1st Dep't 2018) (insured excavator/backhoe temporarily parked during ongoing construction project was instrumentality that produced plaintiff's injuries where bucket of excavator was protruding into the roadway when struck by plaintiff's vehicle); *Ellis v. United Fin. Cas. Co.*, 39 Misc. 3d 1242(A), *2 (Sup. Ct. Kings Cty. 2013) (insured flatbed tow truck was instrumentality that produced plaintiff's injury where plaintiff was standing on truck unloading van when struck by another vehicle causing plaintiff to fall off insured vehicle and sustain injuries); *Westchester Med. Ctr. v. Travelers Prop. Cas. Ins. Co.*, 2002 WL 31355614, *2 (Sup. Ct. Nassau Cty. 2002) (plaintiff injured when insured vehicle in which she was a passenger was intentionally driven off cliff; "[t]he plaintiff's injuries were caused by the actual motor vehicle[;] [s]pecifically, the motor vehicle was the actual instrumentality which produced the

plaintiff's injury") *with In re Manhattan & Bronx Surface Transit Operating Auth. (Gholson)*, 71 A.D.2d 1004, 1005 (2d Dep't 1979) (plaintiff bus-driver injured by knife-wielding passenger not entitled to no-fault benefits; "[r]egardless of whether injuries arise out of the performance of one's duties as an operator of a motor vehicle, first-party no-fault insurance benefits are available only when a motor vehicle, by its use or operation, is the actual instrumentality which produces the injuries").

For the reasons explained above, I conclude that Kellogg is not entitled to PIP or APIP coverage under the Michigan Mutual policy.

## 2.    SUM and Medical Payments Coverage

I turn next to an analysis of Kellogg's entitlement to coverage under the SUM and Medical Payments endorsements included in the Michigan Mutual policy.  As with the PIP and APIP coverage, the parties agree – as argued in their briefs and as conceded during oral argument on August 9, 2018[8] – that the sole issue before the Court with respect to whether Michigan Mutual has a duty to provide SUM or Medical Payments coverage to Kellogg is whether he was "occupying" the tow truck at the time of the incident.  (Docket ## 26-25 at 9-20; 27-3 at 3-20; 30 at 11-13; 32-9 at 8-14; 33 at 6-9; 34 at 6-8).  Again, both parties maintain that no issue of material fact exists to preclude summary resolution of Kellogg's entitlement to coverage under these endorsements.[9]

---

[8]  Although Michigan Mutual argued in its submissions that Kellogg was not entitled to Medical Payments coverage on the separate grounds that "the tow truck was not out of service" (Docket # 27-3 at 19-20), counsel for Michigan Mutual conceded at oral argument that the only issue before the Court with respect to Medical Payments coverage was whether Kellogg was occupying the tow truck.

[9]  Although Kellogg's submissions emphasize that he was in "contact" with the tow truck at the time of the incident (Docket ## 26-25 at 9-11, 16-17; 30 at 11-12; 33 at 8-9), his submissions also make clear – as affirmed by Kellogg's counsel during oral argument – that whether or not he was in physical contact with the tow truck at the time of the impact is not dispositive of his entitlement to coverage under the relevant policy language, and both parties agreed that any outstanding factual dispute concerning whether Kellogg was in contact with the truck would not preclude summary resolution of the coverage issues.  Indeed, both appear to concede that no additional facts

Kellogg maintains that the term "occupying" for purposes of SUM coverage should be interpreted broadly and may include individuals who are no longer passengers in or who are not in direct contact with a vehicle, provided the individual remains engaged in activity relating to the vehicle.  (Docket ## 26-25 at 10-12; 30 at 11-13; 33 at 7-9).  According to Kellogg, although he exited the tow truck in order to tow the Liamero vehicle, his activities remained "vehicle-oriented" throughout the towing process, and he in fact re-entered the truck at least once to better position it in order to complete the tow.  (Docket # 26-25 at 15-16).  Kellogg asserts that at the time of the impact, he had not yet completed – and, indeed, was actively engaged in – the process of detaching the tow truck cable from the Liamero vehicle.  (*Id.*).  These circumstances, in Kellogg's view, demonstrate he was occupying the tow truck at the time of the accident.  (*Id.*).

Michigan Mutual concedes that an individual does not have to be inside or in physical contact with a vehicle in order to be occupying the vehicle for coverage purposes.  (Docket ## 27-3 at 16-18; 32-9 at 8-13; 34 at 5-7).  Michigan Mutual nonetheless maintains that Kellogg was not occupying the vehicle at the time of his injuries because he had exited the tow truck after reaching his intended destination and was performing employment-related activities when he was struck.  (*Id.*).

As noted above, the SUM and Medical Payments endorsements in the Michigan Mutual policy covering the tow truck define "occupying" virtually identically, as "in, upon, entering into, or exiting from a motor vehicle" for SUM coverage and "in, upon, getting in, on, out or off" for Medical Payments coverage  (Docket # 26-23 at 100, 104).  This language is consistent with the statutory language defining "occupying" as "in or upon or entering into or

---

could be developed or adduced to illuminate the question whether Kellogg was touching the truck at the time of impact.

alighting from." N.Y. Ins. Law § 3420(f)(3). The phrase "occupying" for purposes of SUM coverage has "received a liberal interpretation" by courts in New York. *See Rowell v. Utica Mut. Ins. Co.*, 77 N.Y.2d 636, 639 (N.Y. 1991). As the Court of Appeals has observed, "the Legislature gave the word ['occupying'] a specially constructed definition for the purposes of . . . coverage," and courts, in turn, "taking guidance from this legislative signal[,] . . . have held that a person who is 'vehicle oriented' falls within the scope of the term [occupying] . . . – now a very far cry from the lexicographer's definition of the word." *Colon v. Aetna Cas. & Sur. Co.*, 48 N.Y.2d 570, 573-74 (N.Y. 1980) (interpreting identical definition of occupying in earlier version of N.Y. Insurance Law § 5217, a statute addressing protections provided to qualified persons injured by "hit and run" drivers in New York). Thus, "the status of passenger is not lost even though [an individual] is not in physical contact with [the vehicle], provided there has been no severance of connection with it, [the individual's] departure is brief and [the individual] is still vehicle-oriented with the same vehicle." *Rice v. Allstate Ins. Co.*, 32 N.Y.2d 6, 11 (N.Y. 1973).

Although the term "upon" is not defined in the Michigan Mutual policy, its ordinary meaning compels the conclusion that Kellogg was "upon" the tow truck at the time of the impact. "Merriam-Webster defines 'upon' as a synonym for 'on,' which is construed variously to denote being 'in contact with an outer surface' or 'in close proximity with,' as well as to designate 'a source of attachment or support' or 'means of conveyance.'" *Sylvester v. FCCI Ins. Co.*, 2019 WL 330509, *5 (E.D. Mich. 2019) (quoting Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/on (definition of "on")); *see also Colonial Penn Ins. Co. v. Curry*, 157 Misc. 2d 282, 286 (Sup. Ct. Nassau Cty. 1993) ("[a]n examination of the word 'upon' indicates its meaning is related to the idea of use of the automobile [;] such meaning is exclusive of other risks intended to be covered by the words 'entering' and 'alighting'"). At

the time of the impact, Kellogg was on his knees in the process of detaching the tow truck's winch cable from the cloth strap connecting the Liamero vehicle to his truck; if he was not directly touching the winch cable, he was in extremely close proximity to it – either about to release it or having just done so.  Kellogg's physical proximity to and engagement with the tow truck "sensibly comports" with a common and reasonable understanding of the term "upon," particularly in light of the liberal interpretation afforded it under New York law.  *See Sylvester v. FCCI Ins. Co.*, 2019 WL 330509 at *6; *Rosado v Hartford Fire Ins. Co.*, 71 A.D.3d 860, 861 (2d Dep't 2010) ("[i]n accordance with the liberal interpretation afforded the term 'occupying,' we find, as a matter of law, that the injured plaintiff was 'in' or 'upon' the delivery truck at the time of the accident such that he was 'occupying' the delivery truck within the meaning of the SUM endorsement") (citing *Rowell v. Utica Mut. Ins. Co.*, 77 N.Y.2d at 639).

 As the parties concede and as the caselaw makes clear, physical contact with the insured vehicle is not a requirement to establish "occupancy."  *Rice v. Allstate Ins. Co.*, 32 N.Y.2d at 11 ("the status of passenger is not lost even though he is not in physical contact with [the vehicle]").  Here, there is no dispute that Kellogg was using the tow truck for its intended purpose and was actively engaged in that purpose when he was injured.  Indeed, no dispute of fact exists that he was in the process of detaching the tow truck's cable from the strap attached to the Liamero vehicle at the time of the impact.  Under such circumstances, I find that Kellogg was "upon" the tow truck, and therefore occupying it, at the time he was injured, qualifying him for SUM and Medical Payments coverage under the Michigan Mutual policy.  *See Rosado v. Hartford Fire Ins. Co.*, 71 A.D.3d at 860-61 (plaintiff injured when he returned to delivery truck after making several delivery trips to nearby business; at the time of impact plaintiff was "upon" the vehicle where he was standing on the pavement and reaching his hands into the side bay of

the truck in order to rearrange cargo);[10] *see also In re Travelers Ins. Co. (Youdas)*, 13 A.D.3d 1044, 1045-46 (3d Dep't 2004) (respondent entitled to SUM coverage when he was struck from behind after just exiting delivery van and while leaning into its rear in order to unload cargo for delivery).

This determination is also consistent with the line of authority holding an individual may be found to have been "occupying" a vehicle by virtue of remaining "vehicle-oriented." The New York Court of Appeals has recognized that an individual does not cease occupying a vehicle by exiting it so long as "there has been no severance of connection with it, his departure is brief and he is still vehicle-oriented with the same vehicle." *Rice*, 32 N.Y.2d at 11. Here, Kellogg remained oriented with the tow truck during the entirety of the interaction. He arrived at the scene with the intent to use his tow truck to extract the Liamero vehicle from a ditch. After providing instructions to Liamero, Kellogg used his tow truck for that purpose, first by attaching the winch cable to a strap attached to the tire of the Liamero vehicle, then by using the truck's winch to extract the Liamero vehicle. During that process, Kellogg returned to the tow truck at least once to reposition it in order to better effectuate the tow. (*Id.*). These undisputed facts demonstrate that Kellogg remained vehicle-oriented, and thus can be said to have been occupying the tow truck, at the time of the impact. *See, e.g.*, *Continental Cas. Co. v. Lecei*, 65 A.D.3d 931, 932 (1st Dep't 2009) ("[c]ontrary to petitioner's contention, the evidence supports the conclusion that respondent was 'still vehicle-oriented' at the time he was injured");[11] *see also Allstate Ins. Co. v. Flaumenbaum*, 62 Misc. 2d 32, 47 (Sup.

---

[10] A more comprehensive discussion of the facts of this case is included in the trial court's opinion. *See Rosado v. Hartford Fire Ins. Co.*, 21 Misc. 3d 1102(A), *1-2 (Sup. Ct. Kings Cty. 2008).

[11] In this case, the injured party was a streetlight repairman who had arrived at the scene in the insured vehicle. *See Continental Cas. Co. v. Lecei*, 2009 N.Y. Misc. LEXIS 5163, *5 (Sup. Ct. N.Y. Cty. 2009). The injured party had "alighted from the truck intending to collect a few safety cones from his vehicle and then to place them on the roadway to guide motorists away from [his] truck[]" when another driver struck the truck and the

Ct. N.Y. Cty. 1970) (even though plaintiff had reached his destination, he remained vehicle-oriented at the time of impact and thus was occupying the vehicle).

Some authority supports the proposition that SUM coverage may be unavailable to individuals injured while performing their employment responsibilities, even where they were in proximity to a covered vehicle. *See*, *e.g.*, *Gallaher v. Republic Franklin Ins. Co.*, 70 A.D.3d 1359, 1360 (4th Dep't 2010); *Faragon v. Am. Home Assur. Co.*, 52 A.D.3d 917, 919 (3d Dep't 2008); *Coregis Ins. Co. v. McQuade*, 7 A.D.3d 794, 795 (2d Dep't 2004); *In re Martinez*, 295 A.D.2d 277, 278 (1st Dep't 2002); *State Farm Auto. Ins. Co. v. Antunovich*, 160 A.D.2d 1009, 1010 (2d Dep't 1990); *Matthews v. Cont'l Cas. Co.*, 39 Misc. 3d 1216(A), *4 (Sup. Ct. N.Y. Cty. 2013) ("[f]ollowing *Rice*, courts have often found workers outside, but proximate, to their vehicle, not to be 'occupying' the vehicle"). As Michigan Mutual conceded during oral argument, however, the simple fact that an individual is injured during the course of his employment does not preclude coverage. *See*, *e.g.*, *Rosado*, 71 A.D.3d at 861 (delivery driver injured while making deliveries); *Continental Cas. Co. v. Lecei*, 65 A.D.3d at 932 (employee injured after exiting employer's vehicle); *In re Travelers Ins. Co.*, 13 A.D.3d at 1045 (delivery driver injured while unloading cargo for delivery).

In any event, the cases cited by Michigan Mutual differ from the case at bar because the injured individuals in the cited cases were not "in, upon, entering or exiting" the vehicle at the time of the impact, nor did their employment responsibilities require them to remain vehicle-oriented at the time of the accident. *See Gallaher v. Republic Franklin Ins. Co.*, 70 A.D.3d at 1360 (volunteer firefighter injured while directing traffic; "[p]laintiff's conduct in

_____

injured party. *See id.* The Court determined that the injured party "was still in the process of alighting from his truck and preparing to unload safety cones, conduct that was still vehicle oriented" at the time of the injuries. *Id.* at *9.

directing traffic was unrelated to the truck and was not incidental to his exiting it") (internal quotations and brackets omitted); *Faragon v. Am. Home Assur. Co.*, 52 A.D.3d at 919 (delivery driver injured while "engaged in instructing the lessee about the operation of the delivered equipment"); *Coregis Ins. Co. v. McQuade*, 7 A.D.3d at 795 (sanitation worker injured at location one to four blocks from sanitation truck); *State Farm Auto. Ins. Co. v. Antunovich*, 160 A.D.2d at 1010 (repairman injured while walking towards driver's door of covered vehicle after completing repair and returning tools to back of vehicle); *Matthews v. Cont'l Cas. Co.*, 39 Misc. 3d 1216(A) at *4-5 (streetlight repairman injured after inspecting street light and walking towards partner's vehicle to obtain a fuse to repair the light).

   The case cited by Michigan Mutual that is most analogous to the instant case is *In re Martinez*, 295 A.D.2d 277, 278 (1st Dep't 2002), which involved an injury to a driver of a tow truck.  In *Martinez*, the petitioner, a tow truck driver who had been dispatched to the scene to assist a disabled vehicle, was injured by a hit-and-run driver after he had exited the tow truck and was approaching the disabled vehicle.  *Id.*  The court determined that because his "immediate purpose was to attend to the disabled vehicle as a necessary incident to his employment," the case was distinguishable from those finding coverage available to individuals injured during an unexpected interruption in their journey.  *Id.*  Significantly, in *Martinez*, unlike the instant case, the driver was not actually in the process of using the tow truck at the time of the injury, nor did the facts establish whether he intended to tow the vehicle or provide some other assistance to the disabled vehicle.  *Id.*  The facts of this case are thus sufficiently different from *Martinez* to counsel a different outcome – one that squares both with the common understanding of the term "upon" and the "vehicle-oriented" caselaw discussed *supra*.

For these reasons, I conclude that Kellogg is entitled to coverage under the SUM and Medical Payments endorsements of the policy.

## **CONCLUSION**

For the foregoing reasons, plaintiffs' motion for a declaratory judgment (**Docket # 26**) is **GRANTED in PART and DENIED in PART**, and Michigan Mutual's motion for summary judgment (**Docket # 27**) is **GRANTED in PART and DENIED in PART**.  The Clerk of the Court is directed to enter judgment declaring that the policy of insurance issued by defendant Michigan Mutual provides Medical Payments and SUM coverage to Kellogg for his injuries sustained in the December 6, 2016, accident.  The Clerk is further ordered to enter judgment in favor of defendant Michigan Mutual on plaintiffs' claims to PIP and APIP coverage under the policy.

**IT IS SO ORDERED.**


_____
            *s/Marian W. Payson*
            MARIAN W. PAYSON
            United States Magistrate Judge


Dated:  Rochester, New York
          March 7, 2019